UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CMG WORLDWIDE, INC., and THE TOPPS COMPANY, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:08-cv-761-RLY-JMS |
| THE UPPER DECK COMPANY, INC., | ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO TRANSFER VENUE**

Defendant, The Upper Deck Company, Inc. ("Upper Deck"), moves to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the court **GRANTS** the motion.

**I.     Background**

Founded 20 years ago, Upper Deck is in the sports and entertainment business and is most well known for its sale of collectible products, including sports trading cards. (Declaration of John Zimmer ("Zimmer Dec.") ¶ 3). Upper Deck maintains its headquarters in Carlsbad, California, and also maintains offices in Mt. Laurel, New Jersey. (*Id.*). Although Upper Deck does not maintain offices in Indiana, it does conduct business in Indiana through catalogue and retail solicitation and by conducting sales through its website. (Amended Complaint ¶ 6; Zimmer Dec. ¶ 4).

CMG Worldwide, Inc. ("CMG") is a premiere celebrity licensing agency

1

recognized worldwide as the agent and representative for 16 famous baseball players collectively known as the "Legends."[1] (Declaration of Mark Roesler ("Roesler Decl.") ¶ 2; Amended Complaint ¶¶ 1, 11). CMG licenses the Legends' names, likenesses, images, signatures, personae, and other related indicia to third parties. (Amended Complaint ¶ 12; Roesler Decl. ¶ 4). Under its various agreements with the Legends, CMG is charged with the responsibility of enforcing the Legends' intellectual property rights by sending cease and desist letters, filing formal opposition or cancellation proceedings, applying for and maintaining federal and international trademark registrations, and filing and prosecuting litigation on behalf of each of the Legends. (Amended Complaint ¶ 12). CMG is headquartered in Indianapolis, Indiana.

Plaintiff, the Topps Company, Inc. ("Topps"), markets and sells entertainment products, principally collectible trading cards, confections, sticker collections, and collectible strategy games. (Amended Complaint ¶ 17). Topps is headquartered in New York, New York. (Amended Complaint ¶ 3).

In June 2007, Upper Deck and CMG entered into various non-exclusive permission agreements ("Permission Agreements") for the use of the names, likenesses, and statistical data of 14 of the 16 Legends at issue in this case. (Roesler Decl. ¶ 8; Amended Complaint ¶ 21). The Permission Agreements contained a choice of law and

---

[1] The Legends include former Major League Baseball players Jackie Robinson, Lou Gehrig, Mel Ott, Jimmie Foxx, Rogers Hornsby, Thurman Munson, George Sisler, Johnny Mize, Ty Cobb, Roy Campanella, Harold "Pee Wee" Reese, Walter Johnson, Cy Young, Honus Wagner, Christy Mathewson, and Tris Speaker. (Amended Complaint ¶ 11).

2

forum selection clause in which the parties agreed and consented that with respect to disputes arising under or in connection with the Permission Agreements, Indiana "would have exclusive jurisdiction . . . ." (Roesler Decl. ¶ 8; Affidavit of Ryan M. Boyle ("Boyle Aff.") at Ex. B). Upper Deck's rights to the Intellectual Property of the Legends under the Permission Agreements expired on December 31, 2007. (*See* Boyle Aff. at Ex. B).

On March 31, 2008, CMG and Topps entered into permission agreements (the "Topps Agreements") for the exclusive commercial use of the Legends' intellectual property on, *inter alia*, trading card products. (Roesler Decl. ¶ 6).

On April 1, 2008, notwithstanding the expiration of the Permission Agreements, Upper Deck released various baseball trading card products bearing the name, image, likeness or signature of certain of the Legends. (Amended Complaint ¶ 25). According to CMG, Upper Deck intends to continue releasing trading card products through October 2008. (*Id*. ¶ 26).

Unable to amicably work out their differences with Upper Deck, CMG and Topps filed the present lawsuit on June 9, 2008, alleging breach of contract, trademark infringement, false endorsement, false advertising, violation of statutory and common law rights of publicity, unfair competition, unjust enrichment, conversion, deception, violation of the Indiana Crime Victim's Act, and tortious interference with contract. As CMG is a citizen of the state of Indiana, CMG and Topps elected to file the lawsuit here. The court has jurisdiction of this case under 28 U.S.C. § 1331 because the Amended Complaint raises claims under the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

**II.     Discussion**

Title 28, Section 1404(a) of the United States Code sets forth: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that the Southern District of Indiana and the Southern District of New York are proper venues. The court will therefore only address the third factor for appropriate transfer.

The moving party bears the burden of demonstrating that the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996). A district court must adjudicate motions to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Considering the factors set out in § 1404(a) and the particular circumstances of the case, the moving party must show that the transferee forum is clearly more convenient than the transferor forum. *State Farm*, 939 F. Supp. at 651.

When evaluating the convenience and fairness of transfer under § 1404(a), the court must first consider the private interests of the parties. These include: "(1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access

to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties in litigating in their respective forums." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, 2006 WL 324823, at *4 (S.D. Ind. 2006). The court next considers the public interest factors. These factors "include the court's familiarity with applicable law and the desirability of resolving controversies in their locale." *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill. 1995). The court will begin its discussion with the Plaintiff's choice of forum.

### A. Plaintiff's Choice of Forum/Situs of Material Events

Although Plaintiff's choice of forum is generally entitled to some weight, "[w]here the plaintiff's choice of forum is not the situs of material events, or has a relatively weak connection to the events, plaintiff's choice of forum is entitled to less deference." *Bradford*, 2006 WL 324823, at *4; *see also Int'l Truck & Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F.Supp.2d 898, 904 (N.D. Ill. 2002) (where conduct at issue did not take place in plaintiff's preferred forum, plaintiff's preference has "minimal value"); *Von Holdt*, 887 F.Supp. at 188 ("The weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim.").

In *Bradford*, CMG filed suit in this court asserting similar claims to Marilyn Monroe's name, image, likeness and persona. In granting defendant's motion to transfer venue from the Southern District of Indiana to the Southern District of New York, Chief Judge Hamilton ruled, "[h]ere, where one of the Plaintiffs is a Delaware entity and the connection between this forum and the events at issue is weak or even minimal,

5

Plaintiffs' choice of forum does not weigh against a transfer." *Bradford*, 2006 WL 324823, at *4.

Similarly, plaintiff Topps[2] is headquartered in New York City and the connections between the events at issue and Indiana are "weak or even minimal," as the conduct underlying Plaintiffs' causes of action – namely, Upper Deck's alleged infringement of CMG's exclusive rights of publicity and trademarks in the Legends by selling the Yankee Stadium Legacy ("YSL") and Signature Cut baseball trading cards – did not take place in Indiana. (Zimmer Dec. ¶ 4). Nor are any of the primary distributors of the trading cards located in Indiana. (*Id*). CMG's argument that the situs of material events occurred in Indiana because it suffered "significant injury" carries no weight. As stated by the *Bradford* court:

> Plaintiff's argument that the situs of material events occurred in Indiana merely because plaintiffs suffered injury here proves too much. It would mean that plaintiffs could force defendants from anywhere to defend themselves in Indiana against plaintiffs' claims to have worldwide exclusive rights to Marilyn Monroe's right of publicity. This factor weighs heavily in favor of the defendants.

*Bradford*, 2006 WL 3248423, at *4. Accordingly, the court finds that Plaintiffs' choice of forum is not entitled to deference, and that the situs of material events does not favor either party.

### B. Ease of Access to Sources of Proof

CMG's records are located in Indiana; Topps' records are located in New York; and Upper Deck's records are located in California and/or New Jersey. Whether the case

---

[2] It is telling that Topps, located within the Southern District of New York, did not file a brief in opposition to Upper Deck's motion to transfer.

is tried here in Indiana or in New York, at least one of the parties will be inconvenienced by having to ship or otherwise transport records and other related documents to the appropriate court. The court therefore finds that the ease of access to sources of proof does not weigh in favor of either party.

### C. Convenience of the Parties

Both Upper Deck and Topps have offices either in or near the Southern District of New York. Although CMG does not have an office in New York, CMG engages in business throughout the world. (*See* Amended Complaint ¶ 11) ("CMG is the exclusive worldwide agent for . . . sports legends . . . ."). Given these facts, the court finds that the convenience of the parties weighs in favor of New York.

CMG contends that Upper Deck "waived its right to argue the inconvenience of litigating in Indiana" because several Permission Agreements between the parties contained forum-selection clauses naming Indiana as the forum to resolve disputes arising under or in connection with the Permission Agreements. CMG admits, however, that the Permission Agreements expired by their own terms on December 31, 2007. A forum selection clause in an otherwise expired agreement may be enforced only if the dispute arises out of the agreement. *See Educational Visions, Inc. v. Time Trend, Inc.*, 2003 WL 1921811, at *4 (S.D. Ind. 2003).

The dispute at issue here does not arise out of the agreement. CMG alleges that Upper Deck made unauthorized use of the Legends' intellectual property in violation of Topps' exclusive rights under the Topps Agreements. (Amended Complaint ¶¶ 25, 27). Although CMG makes reference to the expired Permission Agreements, CMG does not

explain in the Amended Complaint nor in its filings how the expired Permission Agreements play a role in this case. It is Upper Deck's position that it had an oral understanding with CMG with respect to the YSL baseball trading cards, and that it removed the Legends from the Signature Cut baseball trading cards series after it learned of CMG's exclusive agreement with Topps. (Declaration of Michael Bernstein ¶ 9; Declaration of John Masherah ¶¶ 8-9). The court therefore finds that the forum selection clauses contained in the Permission Agreements do not waive Upper Deck's right to argue that the Southern District of Indiana is an inconvenient forum.

### D. Convenience of the Witnesses

The convenience of the witnesses is often viewed as the most important factor in deciding whether to transfer venue. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). "This analysis is not merely a numbers game: what is significant is the substance and materiality of potential witnesses' testimony." *Somers v. Flash Tech. Corp. of Am.*, 2000 WL 1280314, at *3.

CMG contends that although Upper Deck will be inconvenienced if the case remains in this venue, it will be equally inconvenienced if the case is transferred to the Southern District of New York. However, CMG neglects to mention that Topps, CMG's co-plaintiff, is located in the Southern District of New York. Topps has not filed a response in opposition to Upper Deck's motion to transfer. The court infers from Topps' lack of response that it does not oppose the motion. In addition, Topps will likely call one of its employees, Adam Zucker, who is located in New York. Upper Deck's witnesses likely will not be as inconvenienced by travel to New York as they would to

Indiana, because they will be able to work out of Upper Deck's offices in New Jersey, resulting in a minimal disruption of business activities.

Moreover, two potential third-party witnesses, Marty Appel and Eventville, are located in New York. (Declaration of Kerri Stockholm ¶¶ 2-3). Mr. Appel was responsible for coordinating the public relations and marketing events for Upper Deck's YSL series, which centered in New York. (*Id.* ¶ 2). Eventville, a New York-based marketing firm, executed "street team" events promoting the YSL trading cards in Manhattan. (*Id.* ¶ 3). These individuals have knowledge of the nature and extent of Upper Deck's marketing and promotional efforts for the YSL card series, and will likely be called for trial in connection with Plaintiffs' trademark infringement claims. Given this information, the court finds the convenience of the witnesses factor weighs in favor of venue in the Southern District of New York.

### E.   Interests of Justice

The interest of justice "focuses on the efficient administration of the court system, rather than the private consideration of the litigants." *Espino v. Top Draw Freight System*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989). In analyzing the interest of justice, the court considers: "(1) the congestion and likely speed to trial in the transferee forum; (2) the court's relative familiarity with the applicable law; (3) [the] court's efficiency interest in avoiding duplicative litigation; and (4) the relation of each community to the controversy at issue." *Bradford*, 2006 WL 324823, at *5 (citing *Atlas Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F.Supp.2d 941, 946 (N.D. Ill. 2002)). The first and third factors are not argued, as the Southern District of New York and the Southern

9

District of Indiana move civil cases to trial at similar rates, and duplicative litigation is not an issue in the instant case. Accordingly, the court will address the remaining two factors below.

With respect to the applicable law, the court notes that many of the claims asserted by Plaintiffs arise under Indiana law. However, the thrust of the Plaintiffs' claims arise under the Lanham Act and the right of publicity laws of several states through Upper Deck's use of the names, images, likenesses and signatures of certain former (and now deceased) baseball players. A New York federal court will be equally familiar with the Lanham Act claims and the rights of publicity claims as an Indiana federal court.

However, Indiana has little or no connection with the controversy at issue. CMG, the only party connection to Indiana, is merely acting as an agent for the estates of these players, so its location is not material. In addition, no Indiana property rights are implicated by this case as Topps has not established that any of the Legends were domiciled in Indiana at the time of each of their respective deaths. New York on the other hand, was the domicile of two of the players in question (Lou Gehrig and Christy Mathewson) at the time of their deaths, so New York law applies to any publicity rights that CMG allegedly holds and allegedly transferred to Topps with respect to these former players. In contrast, available information indicates that none of the players identified by Plaintiffs in their First Amended Complaint were domiciled in Indiana at the times of their deaths, so the Indiana Right of Publicity Act is inapplicable to this case. The court therefore finds that New York has a closer relation to the controversy than Indiana, and

that the interest of justice factor weights in favor of venue in the Southern District of New York.

### III.    Conclusion

The court finds Upper Deck has met its burden of showing that venue in the Southern District of New York is clearly more convenient to the parties, the witnesses, and is in the interest of justice.  Accordingly, Defendant's Motion to Transfer Venue (Docket # 33) is **GRANTED**.  This case is hereby transferred to the Southern District of New York.

**SO ORDERED** this  22nd  day of October 2008.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Copy to:

Michael Bogner
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010

Electronic copies to:

David G. Ebert
INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI l LLP
debert@ingramllp.com

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com

Robert L. Raskopf
QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
robertraskopf@quinnemanuel.com

Jessica Anne Rose
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
jessicarose@quinnemanuel.com

John R. Schaibley III
BAKER & DANIELS
jrschaib@bakerd.com

Peter N. Tsapatsaris
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
petertsapatsaris@quinnemanuel.com